# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 18-mj-99
Cellular Telephone Number (225) 921-9122, )
IMSI: 310410099530860 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ___Middle___ District of ___Louisiana___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of controlled substances |
| 21 U.S.C. § 846 | Conspiracy to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Timothy R. Fabre, Task Force Officer (DEA)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___07/17/2018___

*Judge's signature*

City and state: Baton Rouge, LA      Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

Your affiant, Timothy R. Fabre, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), being duly sworn, deposes and states as follows:

I make this Affidavit in support of an Application for a Search Warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number (225) 921-9122, with IMSI: 310410099530860 (the "**TARGET TELEPHONE**"), whose service provider is AT&T, a wireless telephone service provider headquartered at 17330 Preston Rd., Dallas, TX 75252. The **TARGET TELEPHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

I am a Narcotics Detective with the Iberville Parish Sheriff's Office ("IPSO"), employed since August 15, 2002, and have been assigned to the Narcotics Division since February 2008. I am currently assigned to the DEA, Baton Rouge District Office ("BRDO"), since October 1, 2014. Since being assigned to the DEA as a Task Force Officer, I have conducted numerous investigations of unlawful drug distribution, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and conducted or participated in electronic and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of cooperating sources, and reviews of taped

1

conversations and drug records. Through my training, education and experience, I became familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. In addition, I have conducted, in connection with these and other cases, follow-up investigations concerning the concealment of assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs and bank checks, as related to drug trafficking.

I participated in investigations involving the interception of wire and electronic communications devices. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones and of digital display paging devices and their use of numerical codes and code words to conduct their transactions. During these investigations, I have authored numerous federal affidavits requesting approval for the interception of wire communications. Also, during these investigations, I reviewed and interpreted hundreds of conversations related to the distribution of cocaine, cocaine-base, methamphetamine, heroin and other controlled dangerous substances.

This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 (a)(1), 843(b), and 846 have been committed, are being committed, and will be committed by **Richard ANTUNEZ** and others known and unknown. There is also probable cause to believe that the location information

2

described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

This Application arises from a multi-agency investigation targeting a cocaine, marijuana, and heroin-trafficking organization based in Baton Rouge, LA, led by **Richard ANTUNEZ**.

On May 17, 2018, your affiant and TFO Dohm debriefed a cooperating source, hereinafter referred to as the CS. The CS has provided information to DEA since May of 2018. The CS worked in an undercover capacity at the direction of agents and officers, and conducted the negotiations of, and the controlled purchase of, illegal drugs. To your affiant's knowledge, the CS never provided misleading or incorrect information to any DEA agent. To the extent possible, the information provided by the CS was corroborated by independent investigation and your affiant believes the information provided by the CS about the **ANTUNEZ** organization is credible and reliable. The CS is cooperating in return for consideration on pending criminal charges.

During the debriefing, the CS identified **ANTUNEZ** as a large-scale cocaine, marijuana, and heroin trafficker based in Baton Rouge, LA. According to the CS, **ANTUNEZ** is obtaining multi-ounce quantities of cocaine along with large quantities of marijuana from an unknown source of supply who is also located in the Baton Rouge, LA, area. The CS stated that **ANTUNEZ** informed him/her that the unknown source of supply utilizes warehouses around the Baton Rouge, LA, area to store large shipments of cocaine, heroin, and marijuana that the unknown source of supply receives his supply directly from a Mexican cartel. The CS stated that **ANTUNEZ** stated that the unknown source of supply wants **ANTUNEZ** to begin

distributing kilograms of heroin for $30,000.00 per kilogram. The CS stated that **ANTUNEZ** informed him/her that his source of supply traveled in and out of the country on business frequently. The CS stated that **ANTUNEZ** has never disclosed to him/her the name of his source of supply.

The CS informed agents that **ANTUNEZ** has never disclosed any stash locations utilized by **ANTUNEZ** or **ANTUNEZ's** unknown source of supply to him/her. The CS stated **ANTUNEZ** utilizes multiple vehicles but that he/she was only aware of two that the CS believed to belong to **ANTUNEZ**. The CS stated that **ANTUNEZ** is known to drive a white BMW four door passenger car bearing Louisiana license YSE567 which registered to an unknown male Jose Martin Arce (license plate was obtained by agents during the below mentioned controlled purchase between the CS and **ANTUNEZ**). The CS stated that he/she did not know Jose Martin Arce. The CS stated that **ANTUNEZ** also utilizes a green Toyota Tundra (Louisiana license C405090 registered to **ANTUNEZ**).

The CS stated that **ANTUNEZ** moves frequently to different locations in the Baton Rouge, LA, area. The CS stated that they believed **ANTUNEZ** was currently staying with his parents. Agents were able to observe **ANTUNEZ's** Toyota Tundra and White BMW at 6157 Antioch Blvd., Baton Rouge, LA, which belongs to a Luis ANTUNEZ (an address located by agents utilizing law enforcement databases). The CS stated that he/she believed Luis ANTUNEZ was **ANTUNEZ's** father. The CS stated that they contact **ANTUNEZ** over telephone number (225) 921-9122 (**TARGET TELEPHONE**).

On May 31, 2018, the Honorable Richard Bourgeois Jr., Magistrate Judge, Middle District of Louisiana, authorized a pen register on the **TARGET TELEPHONE**. The pen register was activated on June 6, 2018, and remains active.

On June 26, 2018, the CS, while acting in an undercover capacity and at the direction of your affiant and TFO Dohm, conducted a controlled purchase of approximately one ounce of cocaine from **ANTUNEZ** using Official Advanced Funds ("OAF").

Described below are the details of the pertinent calls between the CS and **ANTUNEZ** over **TARGET TELEPHONE**. Your affiant has included his interpretation, contained within the parentheses, of code words or the meaning of the conversation.

At approximately 12:32 p.m., the CS placed a consensually monitored and recorded telephone call to **ANTUNEZ** over the **TARGET TELEPHONE** to arrange the purchase of one ounce of cocaine hcl. During this phone call the following conversation occurred:

ANTUNEZ: "Yea . . . Hello?"

CS: "Hey, what's happening?"

ANTUNEZ: "What's going on?"

CS: "What you got going?"

ANTUNEZ: "Shit, waiting on you."

CS: "Alright, I'm just picking something up from my boy, I got a thousand, I want to get that ounce."

ANTUNEZ: "Alright, bet, give me a few and I'm going to call you."

CS: "Alright, don't be long, I got to go do something with my momma, I got to hurry up."

ANTUNEZ: "Alright, bye"

5

Based on the above conversation, your affiant knows **ANTUNEZ** and the CS are discussing purchasing one ounce of cocaine.

At approximately 12:46 p.m., the CS placed a consensually monitored and recorded telephone call to **ANTUNEZ** over **TARGET TELEPHONE** to confirm the purchase of the cocaine. During the telephone call, the following conversation took place:

CS: "Hey."

ANTUNEZ: "Hello."

CS: "Hey, how long you going to be?"

ANTUNEZ: "Uh, probably like, probably like twenty minutes."

CS: "Alright, I'm going to have to meet you."

ANTUNEZ: "Yes."

CS: "Alright, where you at?   You at the house?"

ANTUNEZ: "Yeah, but I got to go pick it up from one of my boys house."

CS: "Alright, so it will take you just twenty minutes?"

ANTUNEZ: "Give me about thirty minutes, to be real, where you want to meet me at?"

CS: "Right now I'm coming out of uh over there by Cortana Mall way, I got this dude's money so I don't want to play around with it, and bring this shit back to him."

ANTUNEZ: "Alright."

CS: "What about Siegen and Perkins, Jack in the Box?   So I can shoot back where I got to go?"

ANTUNEZ: "Alright, I'm going to call you in a few."

CS: "Alright."

6

Based on the above conversation, your affiant knows **ANTUNEZ** and the CS are discussing where and when to meet to conduct a narcotics transaction.

Toll data for (225) 921-9122 (**TARGET TELEPHONE**) shows that **ANTUNEZ** had an incoming call from the CS at 12:33 p.m., which had a duration of 31 seconds along with a second incoming call to **ANTUNEZ** from the CS at 12:46 p.m., which had a duration of 1 minute and 7 seconds.

At approximately, 1:35 p.m., the CS and the CS's vehicle were searched by your Affiant and TFO Dohm. At approximately, 1:40 p.m., the CS departed the BRDO in route to meet **ANTUNEZ** followed by your Affiant and TFO Dohm.

At approximately 1:50 p.m., the CS arrived at the Jack in the Box located at 8919 Siegen Lane, Baton Rouge, LA. Surveillance was conducted on the CS by your Affiant and TFO Dohm.

At approximately 2:00 p.m., **ANTUNEZ** arrived in the Jack in the Box parking lot driving the above-mentioned white four door BMW. The CS then followed **ANTUNEZ** out of the Jack in the Box parking lot. The CS informed your Affiant that **ANTUNEZ** stated he did not like the open area and to follow him to another location down the road. Surveillance of **ANTUNEZ** and the CS continued by agents out of the parking lot and onto Siegen Lane.

At approximately 2:02 p.m., the CS followed **ANTUNEZ** into the Benny's Car Wash on Siegen Lane and proceeded to the vacuum area. The CS stated that **ANTUNEZ** then approached the CS's window and handed him/her the bag of cocaine. The CS stated that he/she then gave **ANTUNEZ** the OAF to complete the purchase of the cocaine. Due to the location agents were unable to clearly see the transaction take place. Upon review of the covert video

and audio recordings agents could not see **ANTUNEZ** on video during the purchase but were able to identify **ANTUNEZ's** voice performing the transaction with the CS.

At approximately 2:07 p.m., the CS departed the Benny's Car Wash enroute to the pre-determined meeting location, followed by TFO Dohm and your Affiant arriving there at approximately 2:18 p.m.

Upon arrival at the pre-determined meeting location, the CS surrendered a clear plastic bag containing suspected cocaine to TFO Fabre, as witnessed by TFO Dohm. The cocaine has been marked Exhibit 4. Your Affiant and TFO Dohm searched the CS and the CS's vehicle and found no contraband.

Surveillance by agents from the BRDO continued on **ANTUNEZ** in an attempt to locate his residence or possibly his stash location. Agents continued to follow **ANTUNEZ** around the Baton Rouge area. During this time, TFO Jenkins was able to confirm that **ANTUNEZ** was the driver of the BMW.

As surveillance of **ANTUNEZ** continued agents informed your Affiant that **ANTUNEZ** began driving erratically such as driving at high rates of speed then slowing to under the speed limit and began entering and exiting random business parking lots appearing to be performing counter surveillance in an attempt to identify any law enforcement that may have been following him.

Due to the counter surveillance performed by **ANTUNEZ**, your Affiant informed agents to discontinue the surveillance of **ANTUNEZ** to prevent compromising the investigation. Based on the facts detailed above your Affiant knows the **ANTUNEZ** is utilizing **TARGET TELEPHONE** to facilitate the distribution of narcotics.

Information obtained from AT&T, revealed service to (225) 921-9122 (**TARGET TELEPHONE**) an AT&T wireless cellular telephone, international mobile subscriber identity ("IMSI") 310410099530860, a pre-paid phone, subscribed to and billed in the name of Prepaid Customer, 123 ABC Ln., Baton Rouge, LA 70806, with service provided by AT&T since April 22, 2018, and known by your Affiant to be used by **ANTUNEZ** in the Middle District of Louisiana.

Your Affiant knows that AT&T is a company that provides cellular telephone access to the general public. Your Affiant knows providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

9

Based on training and experience, your Affiant knows AT&T can collect E-911 Phase II data about the location of the **TARGET TELEPHONE** by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available.

Based on training and experience, your Affiant knows AT&T can collect cell-site data about the **TARGET TELEPHONE.**

## AUTHORIZATION REQUEST

Based on the foregoing, your Affiant requests that the Court issue the proposed Search Warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

Your Affiant further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the Search Warrant, the proposed Search Warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the Search Warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic

information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

Your Affiant further requests that the Court direct AT&T to disclose to the Government any information described in Attachment B that is within the possession, custody, or control of AT&T. Your Affiant also requests that the Court direct AT&T to furnish the Government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The Government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

Your Affiant furthers requests that the Court authorize execution of the Search Warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

Your Affiant further requests that the Court order that all papers in support of this Application, including the Affidavit and Search Warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor

11

known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize this investigation.

_____
TIMOTHY R. FABRE
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me this 17th day of July 2018, in Baton Rouge, Louisiana.

_____
ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (225) 921-9122, IMSI: 310410099530860, service provider AT&T, a wireless telephone service provider headquartered at 17330 Preston Rd., Dallas, TX 75252 ("**TARGET TELEPHONE**") utilized by **Richard ANTUNEZ.**

2. The location of the **TARGET TELEPHONE** is not clear. The evidence appears to suggest that the **TARGET TELEPHONE** is operating in or about Baton Rouge, Louisiana.

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the **TARGET TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **TARGET TELEPHONE** described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the Government. In addition, AT&T must furnish the Government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the Government. The Government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana



In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   18-mj-99
)
Cellular Telephone Number (225) 921-9122, )
IMSI: 310410099530860 )
)

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Middle _____ District of _____ Louisiana _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

This Court possesses the authority to issue this search warrant under 18 U.S.C. 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment "B"

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 30, 2018 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Erin Wilder-Doomes _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for  30  days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  7/17/18 , 10:45 a.m.       _____ Erin Wilder-Doomes _____
                                                                                                      *Judge's signature*

City and state:       Baton Rouge, LA              Erin Wilder-Doomes, U.S. Magistrate Judge
                                                                                                  *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (225) 921-9122, IMSI: 310410099530860, service provider AT&T, a wireless telephone service provider headquartered at 17330 Preston Rd., Dallas, TX 75252 ("**TARGET TELEPHONE**") utilized by **Richard ANTUNEZ.**

2. The location of the **TARGET TELEPHONE** is not clear. The evidence appears to suggest that the **TARGET TELEPHONE** is operating in or about Baton Rouge, Louisiana.

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the **TARGET TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **TARGET TELEPHONE** described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the Government. In addition, AT&T must furnish the Government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the Government. The Government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).